IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JACKIE CARTER,

                          Plaintiff,                     OPINION AND ORDER

    v.

                                                      15-cv-165-wmc

DONALD MORGAN, CHAD KELLER,
and FERN SPRINGS,

                          Defendants.

---

*Pro se* plaintiff Jackie Carter, an inmate housed at the Wisconsin Secure Program Facility ("WSPF"), was granted leave to proceed on a First Amendment retaliation claim against defendants Donald Morgan and Chad Keller, and an Eighth Amendment deliberate indifference claim against defendant Fern Springs. This case actually is also the latest in a remarkably long-standing dispute between plaintiff Carter and the Wisconsin Department of Corrections arising out of his medical need for specialized shoes. *See Carter v. Radtke*, No. 09-cv-437-wmc (W.D. Wis. July 13, 2009); *Carter v. Radtke*, No. 10-cv-181-wmc (W.D. Wis. Apr. 2, 2010); *Carter v. Radtke*, No. 10-cv-280-wmc (W.D. Wis. May 25, 2010); *Carter v. Ziegler, et al.*, 14-cv-512-wmc (W.D. Wis. July 18, 2014). Before the court is defendants' motion for summary judgment. (Dkt. #19.) For the reasons that follow, the court will grant defendants' motion in full, enter judgment in defendants' favor and close this case.

## UNDISPUTED FACTS[1]

### A. The Parties

At all times relevant to plaintiff's claims, Jackie Carter was an inmate housed at Columbia Correctional Institution ("CCI"). Dr. Fern Springs was a physician employed by the Wisconsin Department of Corrections, who worked at CCI on an as-needed basis. Donald Morgan was CCI's Administrative Captain, and Chad Keller was a Captain at CCI.

### B. December 2013 Medical Orders

On December 17, 2013, another doctor working at CCI, Dr. Heinzl, wrote an order in Carter's medical chart authorizing shoes from an outside vendor that exceeded a $75.00 property limit, and also directing that Carter be allowed to shower in the unit on recreation days, rather than at showers apparently closer to the recreation area. The next day, December 18, Dr. Springs modified Heinzl's original purchase order in two respects: (1) Carter could order high top tennis shoes from an outside vendor; and (2) they could exceed $75.00 provided no shoes were available in the approved vendor catalog. Dr. Springs also added in her medical order that "Purchase must be cleared with Security." (Springs Decl.,

---

[1] For the purpose of deciding the present motion, unless otherwise noted, the court finds the following facts undisputed and material when viewed in a light most favorable to plaintiff as the non-moving party. In opposing defendants' motion for summary judgment, plaintiff did not file a response to defendants' proposed findings of facts, nor did he file a brief in opposition. Instead, plaintiff filed an affidavit of sorts, responding to certain paragraphs of defendant Springs' affidavit. This response falls far short of this court's clear instructions on summary judgment, including those guidelines specific to *pro se* litigants, something Carter knows full well as a frequent filer. Nonetheless, the court will consider Carter's filings and his version of the facts to the extent supported by the record. Carter should not continue to expect this indulgence in future filings.

Ex. 1 (dkt. #24-1) 13.) Finally, in addition to modifying the order concerning shoes, Dr. Springs removed Dr. Heinzl's order allowing Carter to shower on the unit. (*Id.*)[2]

In her declaration in support of summary judgment, Dr. Springs purports to explain the reasons for her changes. Specifically, she "was contacted by someone for clarification of the medical prescription of Dr. Heinzl, after Carter tried to purchase shoes that did not meet security standards, but rather were of a type considered to be a status symbol within the inmate population." (Springs Decl. (dkt. #24) ¶ 8.) Springs further declares "It is my belief that I was contacted by [] someone from the nursing staff for this clarification. However, I do not recall with whom I spoke." (*Id.*) For their part, the other defendants, CCI Administrative Captain Morgan and Captain Keller, both declare that they did *not* contact Springs to tell her to discontinue or change a medical prescription or order. (Keller Decl. (dkt. #22) ¶ 5; Morgan Decl. (dkt. #23) ¶ 5.) Despite a lack of any supporting evidence in the record, Carter maintains in his response that Morgan and Keller directed Dr. Springs to alter the prescription.

Dr. Springs does acknowledge modifying Dr. Heinzl's original medical order without an intervening appointment with Carter. Instead, she based her modified order on review of his medical record. Specifically, Springs relied on Carter's September 17, 2012, treatment note with a podiatrist, who recommended high top tennis shoes for support for Carter's ankles to help treat his tendonitis. Dr. Springs also noted that Carter

---

[2] In his submission, Carter mentions in passing that Springs also modified his prescription for pain medication, but the record bellies this assertion, since both the December 17, 2013, order and the December 18, 2013, order contain the same prescription for methadone. (*See* Springs Decl., Ex. 1 (dkt. #24-1) 12-13.)

3

had received an order for ankle supports. Although Dr. Springs did not believe it was necessary for him to have both ankle supports and high top tennis shoes, she *still* authorized the purchase in an amount that could exceed $75.00, if necessary.

As for Dr. Heinzl's original order allowing Carter to shower on the unit, Dr. Springs maintains that she modified this order because he "had no medical issues that required him to have a restriction for showers on the unit." (Springs Decl. (dkt. #24) ¶ 21.) According to Dr. Springs, there are showers near the recreation building that inmates were allowed to use after recreation period. Moreover, inmates are allowed to shower on the unit two days a week. Otherwise, Dr. Springs concluded that Dr. Heinzl's order would have allowed Carter to shower on the unit on recreation days, even though other inmates on the unit could not do so on non-shower days. Dr. Springs also concluded that "there was nothing about the showers on the unit that was medically more significant than the showers at recreation to meet any treatment needs Carter had." (*Id.* at ¶ 23.) In his submission, Carter disputes that there are showers near the recreation building, contradicting himself, since Carter also asserts the unit showers have handicap stalls, in contrast to those near the recreation area.

**C. August 2014 Placement in the Restrictive Housing Unit**

In addition claiming that Morgan and Keller instructed Dr. Springs to modify Carter's medical orders for shoes and shower privileges, plaintiff asserts a retaliation claim based on his transfer to restrictive housing in August 2014. At summary judgment, defendants propose extensive facts and attach conduct reports, which document an investigation into increased racial tension on the housing unit where Carter was being

housed following an attack on an inmate and comments by inmates following the attack. As a result of that investigation, Carter was issued a conduct report for group resistance and petitions in violation of Wis. Admin. Code DOC § 303.20. He was then adjudicated guilty of that charge and given 360 days in disciplinary separation in the Restrictive Housing Unit. (Defs.' PFOFs (dkt. #21) ¶¶ 19-44.) Carter does not respond to any of these proposed findings of fact, nor does he otherwise support his retaliation claim, other than to observe, among other general statements about prison operations, that Captains Keller and Morgan have "full control" over CCI.

OPINION

I. **Deliberate Indifference Claim against Dr. Springs**

As the court emphasized in granting leave to proceed on a deliberate indifference claim against Dr. Springs, Carter must demonstrate both that: (1) he had a serious medical need; and (2) Dr. Spring was deliberately indifferent to that need. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). "Serious medical needs" include conditions that: (1) are life-threatening or that carry risk of permanent serious impairment if left untreated; (2) in which withholding of medical care results in needless pain and suffering; or (3) have been "diagnosed by a physician as mandating treatment." *Gutierrez*, 111 F.3d at 1371-73. A prison official has acted with deliberate indifference when she "knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (citing *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002)). The evidence of record does not reasonably support either of these

5

requirements with respect to Dr. Springs' decision to modify Dr. Heinzl's order on Carter's shoe purchase or shower accommodation.

*First*, as to the shoe purchase order, Dr. Springs did *not* preclude Carter from selecting shoes from an outside vendor, or limit the cost of those shoes to $75.00. To the contrary, Dr. Springs' modified order, like Dr. Heinzl's provided that Carter "[m]ay order high top tennis shoes. If none available in catalog[,] may order from outside vendor. . . . Cost may exceed $75." (Springs Decl., Ex. 1 (dkt. #24-1) 13.)

Accordingly, the only meaningful change Springs made was to state expressly that the "Purchase must be cleared with Security." (*Id.*) In his submission, however, Carter himself admits, "Absolutely Nothing comes in prison without the approval of security." (Pl.'s Resp. (dkt. #28) p.1.) As such, even this modification -- simply requiring approval by security -- does not alter in any meaningful way Dr. Heinzl's original order. Perhaps more critically, Dr. Springs' modifications do *not* implicate Carter's alleged serious medical need, an ankle condition, apparently tendonitis. Stated another way, Dr. Springs' order requiring security approval was not even a denial of care, requiring a medical judgment, as much as an affirmation of DOC policy. On this record, therefore, a reasonable jury could not find that Dr. Springs acted with deliberate indifference to a serious medical need in modifying the order to require security clearance.

*Second*, Carter challenges Dr. Springs' discontinuance of the order allowing him to shower on the unit. At least with respect to this claim, Dr. Springs *did* modify Dr. Heinzl's order, though her action again appears unrelated to any medical issue. In response, Carter contends that the unit showers have handicap stalls, but fails to offer any reason why he

6

would need access to a handicap stall to shower, much less that this was Dr. Heinzl's reason for ordering that option in the first place. Moreover, Carter offers no basis for a reasonable trier of fact to find Dr. Spring acted with deliberate indifference to this need. On the contrary, from Dr. Springs' review of his medical record, there appeared no medical reason for this accommodation, nor even a indication in his record that Carter was handicapped.

At the very least, Carter fails to put forth evidence that Dr. Springs was aware of a serious medical need for showering in his housing unit on exercise days, but chose to disregard it. Moreover, nothing about Dr. Springs' order limits Carter's ability to shower in the unit showers, including the handicap stalls, on regular shower days. At most, the modification simply means that Carter would have to use the recreation showers after exercising. Perhaps a reasonable jury might find that Dr. Springs' modification of the shower order without investigating Dr. Heinzl's reason for the order was careless, but certainly not that it constitutes deliberate indifference to Carter's serious medical need. As such, the court will grant summary judgment to Dr. Spring on Carter's Eighth Amendment deliberate indifference claim.

## II. Retaliation Claims

In his complaint and in his opposition, Carter maintains that Captains Morgan and Keller directed Springs to modify Dr. Heinzl's orders in retaliation for him pursuing claims about his shoes in this court. As the court also explained in its screening order, for this claim to go forward "[a]n act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). To prove a claim for retaliation, however, Carter must demonstrate that: (1) he

7

was engaged in a constitutionally protected activity; (2) he suffered a deprivation that would likely deter a person from engaging in the protected activity in the future; and (3) the protected activity was a motivating factor in defendants' decision to take retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). If Carter makes this initial showing, then the burden shifts to defendants to prove that they would have taken the same actions "even in the absence of protected conduct." *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011).

Here, plaintiff has failed to put forth *any* evidence connecting Dr. Springs' decision to modify his medical orders with defendant Morgan's or Keller's knowledge of Carter's prior efforts to pursue shoes through litigation in this court.[3] Plaintiff's mere hunch that they directed her actions with regard to his shoes forms an insufficient basis for a reasonable jury to find a causal connection between his filing of lawsuits and the actions of Dr. Springs, a third party to this retaliation claim. As such, the court concludes that plaintiff has failed to make this initial showing. *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) ("Summary judgment is the 'put up or shut up' moment in a lawsuit.").

As described above and in his complaint, Carter also alleges a retaliatory motive premised on a December 2014 disciplinary action, resulting in him being assigned to restrictive housing. Defendants spend much of their brief setting forth their account of

---

[3] The court accepts plaintiff's proposition that at least Morgan was aware of his prior shoe litigation, but the thrust of that litigation occurred several years before the allegations at issue here. While timing itself cannot form a sufficient basis for a finding of causation, here, the significant length of time between the protected activity and the alleged retaliatory actions further undermines such a finding. Regardless, Carter's real problem is that he has no evidence to link Morgan and/or Keller's knowledge to Springs' actions.

8

the circumstances giving rise to that disciplinary action. And, again, Carter offers *no* response to these facts, nor otherwise mentions this aspect of his retaliation claim. Regardless, here, too, Carter fails to offer any evidence supporting a finding that the disciplinary actions were motivated by Carter's prior filings of lawsuits pursuing Eight Amendment claims concerning his shoe needs. Accordingly, the court will grant summary judgment to defendants Morgan and Keller on Carter's retaliation claims.[4]

---

[4] In addition to filing a response to defendants' motion for summary judgment, Carter also renewed his motion for recruitment of pro bono counsel. (Dkt. #30.) As Carter is aware, there is no right to counsel in a civil case. Instead, the court will take steps to recruit counsel only if "the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007). The demands of this case, in particular the need to respond to defendants' motion for summary judgment, did not exceed Carter's ability, even if the response itself was lacking. If the court rested its order on Carter's failure to demonstrate that he suffered from a serious medical need, perhaps Carter's request for recruitment of counsel would have more traction, but, here, the court reviewed the medical record, Springs' affidavit and Carter's response to conclude that Dr. Springs' December 18, 2013, did not rise to deliberate indifference, or at least no reasonable jury could find otherwise. As for the retaliation claim against Morgan and Keller premised on Dr. Springs' action, no amount of legal expertise or argument could save that claim, as it apparently was simply based on a hunch. Likewise, having failed to provide *any* response to the facts surrounding the investigation, conduct report, hearing and adjudication, the court similarly finds that Carter was not prejudiced by the lack of counsel in responding to that portion of the summary judgment motion. At minimum, Carter has failed to explain why he lacked the ability to do so. If anything, Carter's past, prodigious discovery efforts in other lawsuits in this court, as well as his lucid response to defendants' motion, suggests just the opposite.

ORDER

IT IS ORDERED that:

1) Defendants' motion for summary judgment (dkt. #19) is GRANTED.

2) Plaintiff's motion for assistance in recruiting counsel (dkt. #30) is DENIED as moot.

3) The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 12th day of March, 2018.

BY THE COURT:


/s/
_____
WILLIAM M. CONLEY
District Judge